## Crammond v. Newman.

(Decided May 9, 1911.)

### Appeal from Hancock Circuit Court.

1. Cities—Water Front—Wharf Privileges—Landings—Cities are not required to reserve the most convenient and suitable place for stamboats to land during high water, but so long as they retain of its water front a place sufficient to afford steamboats a reasonably suitable and convenient place to land, the owners thereof may not complain.

2. Same—To deny to a city the right to lease out portions of its water front in order that the owners of boats might during high water prefer these places as landings would be to place an unreasonable restriction upon the city authorities in the control of the water front.

BEN D. RINGO for appellant.

GEORGE W. JOLLY and HORACE JOLLY for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

Hawesville is a city of the fifth class, and fronts on the Ohio river. On September 6, 1909, the city council, at a regular session, leased to George W. Newman a lot on the water front 30 ft. by 80 ft., north of and bordering on Water street, for a period of twenty years. Shortly thereafter he commenced building on this leased lot a wareroom, 30 ft. by 30 ft., for the purpose of conducting a grain and hay business and opening a coal office thereon. After the building had been partially completed W.

D. Crammond filed a suit in equity in the Hancock Circuit Court, in which he sought, on behalf of himself and all other citizens and taxpayers of the city to perpetually enjoin and restrain the said Newman from erecting said building. He alleged that the defendant was proceeding to erect the building without lawful right; that the lot upon which it was being built was below high water mark and was the only convenient landing place during high water, and that the building would work an irreparable injury to him and the taxpayers and citizens of the city; that neither Congress, the Secretary of War nor the State government, nor any one else with authority so to do, had authorized the building to be erected, and that the work was being done in violation of plaintiff's rights and the rights of other taxpayers of the town similarly situated. The petition then charges that, "this plaintiff and all other taxpayers and citizens of the town of Hawesville have a common interest in the matters and things herein set forth, and plaintiff asks to be allowed to prosecute this action for the benefit of all citizens and taxpayers of said town, and all those having a common interest with plaintiff in the matters and things herein set forth, and that unless defendant is restrained and enjoined from going forward and erecting said building great and irreparable injury will result to this plaintiff and the other citizens and taxpayers of said town, and defendant will, unless so restrained and enjoined, proceed, immediately, to erect said building and attach same to the soil upon the ground above described, and he says that irreparable injury will result to this plaintiff and other citizens and taxpayers aforesaid, from the delay in giving notice of application for an injunction herein; and that no restraining order or injunction, or other process has been granted, issued or refused, by this or any other court, in this case. He says the defendant, George W. Newman, has no right, title or interest in the lot or water front upon which he is about to erect said building, and has no right to go forward or erect same to the injury of the rights of this plaintiff and the other interested persons as aforesaid."

A restraining order in conformity with the prayer of the petition was issued by the clerk. This was later heard and dissolved by the Circuit Judge. Plaintiff thereupon moved for an injunction pending the suit. This was overruled, and an application was made by

plaintiff to Judge Henry S. Barker, one of the judges of this court, and, on the authority of Matthews v. Rogers, 107 Ky., 236, and St. Bernard Coal Co. v. Pittsburg Coal Co., 112 Ky., 418, he refused to act. In its answer, after traversing the material allegations of the petition, the defendant pleaded affirmatively that he had leased the lot in question from the town of Hawesville, a city of the fifth class, under the authority given the council by section 3637, Kentucky Statutes, so to do.

The proof was taken by deposition, and shows the following state of facts: Hawesville is located on the south side of the Ohio river, which at that point flows east to west. It has a river frontage of more than fifteen hundred feet, is bounded on the west by Lead Creek and on the east by Copperas Branch. There are six streets running north and south, each about fifty feet wide. The first street on the water front is known as Water street, and runs parallel with the river. It is about sixty feet wide. The south margin of Water street is about three hundred feet from the top of the river bank. The Louisville, Henderson & St. Louis Ry. Co.'s track is located on Water street from one end of the town to the other, and this track is built upon an embankment fifteen or twenty feet wide, and about three feet above the original street level. There is a strip of ground extending the full length of the town, north of the margin of Water street, and two hundred to three hundred feet wide, to the top of the river bank. The street known as Main Cross street extends down to the river. The lot in question fronts thirty feet on the north side of Water street and eighty feet on the west side of Main Cross street. North of this lot is the wharf lot, and it extends some three hundred feet down to the river west of Main Cross street, which is its east boundary. The Ferry lot, which is owned by appellant, is west of the wharf lot. The land on which Hawesville is located originally belonged to one Richard Hawes, and when the County of Hancock was established in 1836, he dedicated it to the county for a county seat. A map of the town as laid out shows the location of the streets, alleys, lots, water front, and a ferry lot, which was reserved. This strip of land lying north of Water street and extending along the river the entire length of the town has been in the possession and under the control of the city authorities since its dedication in 1836. No part of it has ever been sold,

or attempted to be sold, but it has been leased and rented from time to time, and occasionally parts of it for agricultural purposes. Upon it buildings have been erected. Between Clay and Main Cross streets there is a pumping station for the water works and a coal house, and west of that is located the power house for the electric light plant, and then another building, used as a coal office. On the west side of Main Cross street is the lot upon which the building in question was being erected, and about three hundred yards west of this lot is a large warehouse, controlled by appellant, and still further west two large buildings used as grain elevators. All of these buildings are upon the water front owned by the city, and they have been erected by their respective owners with the consent and approval of the city authorities, the ground upon which they stand having been leased by the city council for that purpose.

During ordinary stages of water the regular steam boat landing is at the wharf. In high water, when boats are running, they frequently land at the foot of Clay street, but the proof shows that they may land anywhere. Much of plaintiff's evidence tended to show that the point at which the building in question was being erected was the most convenient and suitable place at which to land during high water. But when the evidence is considered as a whole it shows that, during high water, the boats might land at any place along the river front, and the question as to what particular point was best suited for a landing during high water is left undetermined, some holding one point, and others another, as the most suitable and convenient at such times; but practically all agreed that boats might land at almost any point along the river front. Appellant is the owner of a steamboat operated on the Ohio river.

Upon this showing the chancellor held that plaintiff was not entitled to the relief sought, and dismissed his petition. He appeals.

It is stated in brief that the chancellor was of opinion that plaintiff had failed to show that he had theretofore, or would sustain any special damage by reason of the erection of the building complained of, and hence had no right to maintain the suit. In other words, he found that, if the building when completed would be a nuisance, it would be a public and not a private nuisance. The case might have been rested upon this ground, for the

evidence fails to show that plaintiff could, under any state of facts, have sustained any damage other than that which would have been sustained by any other owner of a steamboat plying that river. His inconvenience, annoyance and damage, if any, is not distinguishable from the same inconvenience, annoyance and damage which would have been suffered by any other owner of a boat, hence, as said by this court in the case of Beckham v. Brown, 19 R., 519, and Shields, et al. v. L. & N. R. R. Co., 97 Ky., 103, plaintiff had no right to maintain the suit. In each of the cases cited and relied upon by appellant, as supporting his right to maintain the suit, the complainant had sustained a special damage peculiar to himself.

The question of the validity of appellee's lease can not enter into the consideration of this case, for his occupancy of the lot was under and with the express authority of the city council, and for the purposes of this case it is wholly immaterial whether or not council had a right to lease the property without first advertising and putting it up at a public offering, as in the case of selling a franchise. Appellant's complaint is that the erection of the building will create a nuisance to his special damage. If the proof supported his plea he would be entitled to the relief without regard to whether the lease was lawful or otherwise. Conceding all he says to be true, and giving to his evidence the most favorable construction possible, it only shows that during high water the point at which this building is being erected would be the most convenient one at which to land. This is not enough. The city is not to be thus restricted in the use and control of its water front. It is not required to reserve the most convenient and suitable place to land during high water, but so long as it retains of its water front a place sufficient to afford steamboats a reasonably suitable and convenient place to land, the owners thereof may not complain. It is common knowledge that the river seldom reaches that stage known as the high water mark, and then that this stage usually lasts but a few days, so that it is only on rare occasions that any other than the usual wharf landing would have to be used. To deny to the city the right to lease out portions of its water front in order that the owners of boats might, during high water, prefer these places as landings, would be to place an unreasonable restriction upon the city authorities in

the control of the water front. But this question is not before us.

Plaintiff, having failed to show any special damage in himself, was not entitled to prosecute the suit, and the trial judge correctly so held. The judgment might be affirmed upon the other and broader ground, that the proof failed to show that the erection and maintenance of the building at the point complained of would constitute a nuisance, either public or private. But it is unnecessary to enter upon a consideration of this question.

Judgment affirmed.