## Ricketts et al. v. Hiawatha Oil & Gas Co. et al.

Oct. 9, 1945.

E. R. Morton for appellant.

Cary, Miller & Kirk, O. L. Fowler, Pentecost & Dorsey and W. B. Harris for appellees.

Opinion of the Court by Judge Harris—Affirming.

The city of Uniontown, a municipality of the fifth class, is the owner in fee simple of a 200-acre tract of land lying between Water Street and the Ohio river. See City of Uniontown v. Berry, 72 S. W. 295, 24 Ky. Law Rep. 1692. On August 5, 1940, the city executed to one Sylvester Yunker an oil and gas lease on this acreage for a period of five years, and for so long thereafter as oil or gas should be produced, but in no event for a longer period than 20 years. By mesne assignments the lease, which is in the usual form and tenor of oil and gas leases in Kentucky, and which provides for an annual rental of $1 per acre and for the delivery to the city of one-eighth of all oil or gas produced, is now owned by the Hiawatha Oil and Gas Company and the Plymouth Oil Company, and they have drilled ten profitably producing wells on the leased premises at a cost of approximately $15,000 each.

The appellant Ricketts, for himself and on behalf of all other residents and taxpayers of the city, filed his petition in equity, which he amended several times, claiming therein that the entire tract covered by the lease had been dedicated as a water front; that it should be left open as a common or public ground for full access from all parts of the city to all parts of the river; that because of the nature and purpose of the dedication the city had no right or authority to divert any part of the tract to any other purpose; that the underlying oil and gas constituted part of the land itself; that the lease constituted a diversion to purposes foreign to the dedication, and in effect deprived the public of the benefits

of a portion of the city's river frontage. He closed his petition with a prayer that the lease be cancelled and declared void, and that the lessees be required to make an accounting.

The lessee companies and the city filed special demurrers and also answers, which were accompanied by properly authenticated exhibits showing each and every step taken by the parties in connection with the execution of the lease, including the nunc pro tunc and ratifying resolutions which will be hereinafter mentioned. To these answers Mr. Ricketts filed general demurrers.

With the record in the condition indicated, and without the introduction of testimony other than a stipulation, the chancellor overruled both the special demurrers of the appellees and the general demurrers of the appellant, and the latter declining to plead further, his petition was dismissed.

In short, the lower court sustained Mr. Ricketts in his right to prosecute the action, but held that the lease was valid and that he and those for whom he sued were not entitled to any relief.

Since the appellees seem to acquiesce in the chancellor's ruling on their special demurrers, we shall disregard so much of the briefs as deal with that phase of the case and devote our opinion to a consideration of those matters only which we conceive to be essential to a proper disposition of the controversy, to-wit: (a) the authority of the city to execute the lease, and (b) the validity and sufficiency of the steps taken in that connection.

(a) In their answer the appellees allege, in substance, and by his demurrer thereto the appellant admits:

(1) That the city of Uniontown, when it leased its land for oil and gas on August 5, 1940, was without funds to drill and explore for oil and gas, or to complete the development by further drilling, upon discovery of oil, and that it had no means to obtain funds for such purposes; and

(2) That the lease was in the usual, customary form; that it contained standard provisions ordinarily used in commercial oil and gas leases; that it was in the same form which ordinarily prudent business men use in exe-

cuting oil and gas leases, and that the execution of the lease was an act such as would have been done by a private individual similarly situated, in the exercise of sound business judgment; and

(3) That the ten wells drilled upon the lease have been spaced regularly, one well to each ten acres; that the wells are so widely separated and are so equipped and operated that the drilling thereof and the subsequent operation has not interfered, and does not now and will not in the future interfere, with the use of the land for the water front of the city or for wharf purposes; and

(4) That the city for many years has leased the land for agricultural purposes; that it is now being operated as farm land, and that the operation of the oil wells has not interfered, and does not and will not interfere, with farming operations.

KRS 87.080 (3637-1) reads: "The city council may purchase, lease or receive such real and personal property as may be necessary and proper for municipal purposes, and may control the same for the benefit of the city. The city council may dispose of any such property, except the water front, for the benefit of the city. The city council may not sell or convey any portion of the water front, except when the United States Government requires it for purposes of improvement of rivers and facilities for water transportation along the water front, in which event the city council, through the mayor, may sell, convey and transfer to the United States Government the water front or such portion thereof as may be required for the purpose. The city council may lease the water front for a term not exceeding twenty years, except the wharf privileges, which shall not be leased for more than five years."

In Crammond v. Newman, 143 Ky. 544, 136 S. W. 1020, we held that a city might lease its water front to an individual for the erection of a building thereon, even though during high water the point at which the building was to be erected was the most convenient place for the landing of steamboats operated on the river so long as the city retained on its water front a place sufficient to afford steamboats a reasonably suitable and convenient place to land.

In Williams et al. v. McKenzie, 203 Ky. 376, 262 S. W. 598, 601, we sustained an oil and gas lease which had been executed by the Johnson County Board of Education although the deed by which the board had acquired its title expressly provided that the property conveyed was to belong to the school board only so long as it was used for common school purposes, and that whenever the same was no longer so used it should revert to the grantor, since it was our view that a development of the oil and gas would not have the effect of constituting abandonment of the property for school purposes or of appreciably interfering with the use of the property for school purposes. In the course of the opinion we said: "Oil and gas are fugitive minerals; they are connected by underground streams or crevices by which they may be drained from one property onto another, and there brought to the surface. There can be no sound or practical reason given that will deprive school authorities who own property under which there are valuable minerals from entering into contracts for its development, and particularly would this seem to be true when the character of the mineral is such that adjoining landowners may profit at the expense of the school property by the failure of the school authorities to enter into such contracts."

In view of the express permission given by the statute supra, and consonant with our rulings and reasoning in the Crammond and Williams cases, the Mayor and the council were authorized and empowered to execute the lease.

The appellant's cited cases of Bedford-Nugent Co. v. Argue, 281 Ky. 827, 137 S. W. 2d 392, and Wood v. Town of Lewisport, 221 Ky. 566, 299 S. W. 197, do not dissuade us from these views. In the Bedford-Nugent Company case the council of the city of Henderson, by proper ordinance, dedicated and established a tract of land belonging to it as a park. Thereafter the city undertook to lease a part of the land to a sand and gravel company. In passing upon the right of the city to execute that lease we held that section 3290-33 of the statutes authorized the establishment of parks by the general council of the cities of the third class but made no provision for their disposal or abandonment, and that in the absence of such legislative authority it would seem that

where the city purchased, condemned or formally appropriated lands for park purposes and established same, it would not be permitted to dispose of or to devote such land to purposes inconsistent therewith. And in our opinion in Wood v. Town of Lewisport we acknowledged the right of the city to rent its water front for a term of not exceeding twenty years. The other authorities relied upon by the appellant are text book citations or opinions from other jurisdictions; to-wit, 43 C. J. p. 1344, 67 C. J. 641; Murray v. City of Alleghany, 3 Cir., 136 F. 57; Cummings v. City of St. Louis, 90 Mo. 259, 2 S. W. 130; 38 C. J. p. 166; 63 A. L. R. 492; 18 A. L. R. 1247; 20 R. C. L. 645, and to the extent that they may be incompatible with the conclusions which we have reached hereinabove we are unwilling to follow them here.

(b)   A proper consideration of this branch of the case necessitates a recitation and review of the various steps taken in that connection.

At a regular meeting of the city council on July 1, 1940, a resolution was unanimously adopted directing that the city offer for sale at public auction to the highest and best bidder an oil and gas lease for the development of the above mentioned tract of land for a term of five years, and for so long thereafter as oil or gas, or either, should be produced, at an annual rental of $1 per acre.   The resolution further directed that the lease be sold for cash, including the first year's rental, and that the lessee be required to commence drilling a well within a radius of two miles of the city within thirty days from the date of the lease.   The resolution also instructed the clerk to act as commissioner and to offer the lease for sale on July 19, 1940, at 1 o'clock p. m., at the City Hall, after having advertised the date, terms and place of sale, together with a description of the lease to be sold, in the Uniontown Telegram, a newspaper of general circulation in the city.   Pursuant to the resolution and to the following notice which was duly published in the Uniontown Telegram in its issues of July 5 and 9, 1940:

"Franchise Sale

"Oil and Gas Lease, City of Uniontown Property

"Pursuant to direction given to me by the Council of the City of Uniontown, I will offer for sale to the

highest bidder at the City Hall at Uniontown, Kentucky, on July 19, 1940, at one o'clock p. m. a franchise or lease for the development of 200 acres of land in Uniontown, belonging to the City of Uniontown lying on the Ohio River.

"This land to be leased for a term of 5 years at an annual rental of one dollar per acre. This lease is to be sold for cash, including the cash payment of the first year's rental, and purchaser will be prepared to pay in cash at once, else property will be resold.

"The purchaser of this lease shall drill or cause to be drilled a well within a radius of 2 miles of Uniontown, this well to be commenced 30 days from date hereof.

"Witness the hand of the undersigned, Clerk of the City of Uniontown, this the 1st day of July, 1940.

"Sam T. Cox, Clerk."

a sale was conducted by the clerk at the time and place indicated, and Mr. Sylvester Yunker was found to be the successful bidder at the price of $100, which he then paid to the clerk together with $200 in payment of the first year's rental. At the next regular monthly meeting of the city council—August 5, 1940,—the clerk made a full report of the sale and the council adopted a resolution of acceptance and approval and ordered the execution and delivery to Mr. Yunkers of an oil and gas lease pursuant thereto. This the Mayor and the city councilmen then and there did, and Mr. Yunkers caused the lease to be recorded in the office of the Clerk of Union County on August 12, 1940. After the lessee had drilled in ten income producing wells, and after Mr. Ricketts had filed the present action, it was discovered by the city and the lessees that the city clerk had failed to enter and record on the official minute book either the proceedings of July 1, 1940, or those of August 5, 1940. The only thing he had done toward preserving a record was to paste on page 244 of the minute book a clipping of the newspaper advertisement. Upon making this discovery the city council, on May 18, 1944, adopted a lengthy and comprehensive resolution which was duly entered of record and signed, setting forth in detail the steps which had been taken on July 1, 1940, and on August 5, 1940, including the execution and delivery of the lease and ratifying, adopting, approving and confirming the same

nunc pro tunc, all of which is clearly established by the pleadings and exhibits contained in the record herein.

The question sharply presented by this branch of the case is, therefore, whether the rules regarding the entering and signing of orders nunc pro tunc are applicable to municipal legislative bodies, and whether there existed enough record evidence of the prior action of the Mayor, council and clerk to authorize the entry of the nunc pro tunc resolution.

That the general rules regarding the entry of nunc pro tunc orders apply to municipal legislative bodies, and that the city council had ample authority to enter the nunc pro tunc resolution complained of, provided there was sufficient record evidence of their former action, is well settled. Frankfort Kentucky Natural Gas Co. v. City of Frankfort et al., 276 Ky. 199, 123 S. W. 2d 270.

Since the above-mentioned copy of the proposed sale of the lease was duly pasted in and made a part of the city's official minute book, and since the lease—which was in writing and duly signed and acknowledged by the Mayor and by the members of the council in their official capacities and recorded in the office of the clerk of Union county—fully recited all and singular the steps taken by the council at its meeting in July, 1940, and at its meeting on August 5, 1940, it is our view that there was sufficient record evidence to authorize the nunc pro tunc resolution complained of  (Clift et al. v. Rice, 185 Ky. 830, 216 S. W. 101) and that the resolution which it finally passed on May 18, 1944, was amply sufficient to constitute a ratification of the lease.

We concur in the conclusion reached by both the appellant and the appellees that the change which was attempted to be made in the lease on August 2, 1943, but which was not mentioned in the nunc pro tunc or ratifying resolution, was a nullity, and we shall not make further comment thereon.

Judgment affirmed.