David MEAHL et al., Appellants,

v.

CITY OF HENDERSON et al., Appellees.

Court of Appeals of Kentucky.

March 9, 1956.

Rehearing Denied June 15, 1956.

owners on 7 streets situate in the city to determine whether the property owners properly may be taxed for the payment of the costs of constructing streets, curbs and gutters constructed by the city through a contract with the R. B. Tyler Company. Inc.

The judgment of the Henderson Circuit Court was in favor of the property owners on one of the streets (River Street), but adverse to the property owners on the other 6 streets. It also adjudged that the city of Henderson had entered into a valid contract with the R. B. Tyler Company for the construction of River Street and, since the property owners were not liable for the construction of the street, the city was required to pay the R. B. Tyler Company out of its general fund for the cost of the construction of River Street.

On the original appeal, appellants, who proceed by class representation, insist that the judgment improperly imposed a lien on their property. On cross appeal, the city urges that the judgment is erroneous because (a) it relieved the property owners from liability for the construction of River Street; (b) held that the city was liable to R. B. Tyler Company for payment out of its general revenues for the improvement of River Street; and (c) relieved certain property owners from the payment of interest from the date of their option to select the 10-year installment payment plan provided for by statute, yet held the city liable to R. B. Tyler Company for interest from July 12, 1954, which was the expiration date of 30 days after the apportionment ordinance was enacted.

J. L. Dorsey, Henderson (on cross appeal: John S. Palmore, Henderson) for appellants.

John S. Palmore, Henderson (on cross appeal: Smith, Reed & Leary, Frankfort, Dorsey & Dorsey, Henderson), for appellees.

MOREMEN, Judge.

This is a suit for declaration of rights, under KRS 418.040 to 418.090, by the city of Henderson against abutting property

This case has several general issues appropriate to all 7 streets which involve the general legal sufficiency of the steps taken by the city under Chapter 94 of the Kentucky Revised Statutes, and several special issues which are limited to particular circumstances and parties.

Some of the important steps taken by the city are these:

On March 25 and May 5, 1952, the city passed resolutions (pursuant to KRS 94.-

292) calling for the improvement of about 50 streets. These resolutions were properly published.

On July 28, 1952, and April 15, 1953, ordinances were passed which provided for the improvement of 18 of the streets, 7 of which are here in issue.

On June 8, 1953, a resolution was passed authorizing advertisements for bids on the proposed construction work.

On June 13 and June 20, 1953, pursuant to this resolution, "Notice to Bidders" was published in a daily newspaper and, on June 12 and June 19, in another newspaper, another "Notice to Bidders" was published. Both newspapers were of general circulation in the city. The notice advertised 13 streets for improvement and designated that bids would be opened on June 29, and awards made on June 30, 1953.

On June 30, 1953, a contract for improvement of the streets was awarded to appellee R. B. Tyler Company.

On August 4, 1953, a protest was filed with the city and a copy of it mailed to the construction company by the owners of the property on each of 7 streets. This reads in part as follows:

"We, the undersigned, who own property abutting on a portion of one of the Streets to be improved under the above mentioned contract, now notify the City of Henderson, Kentucky and R. B. Tyler Company, Inc. that we will not pay any cost or charge assessed against our property for the construction or improvement of a street.

"The ordinances of the City of Henderson providing for the construction or the improvements of these streets are improperly enacted as ordinances and are illegal and void and of no effect. Said ordinance contravenes the Constitution of Kentucky and the Constitution of the United States of America. In the year 1952 the City of Henderson constructed and paved and repaired, out of its own funds and without assessment against the property owners, many miles of Streets in the City of Henderson. The City of Henderson cannot build and construct a portion of its streets at the expense of the property owners and another portion of its streets exclusively out of City funds. The issuance of bonds by the City in connection with the improvements and repairs of the above streets is illegal and not permitted. The charge of the intersections of streets against property owners is illegal and void. The charge or assessment for streets against the corner property is illegal and void. The payment by the City of Henderson for streets as the work progresses is an indebtedness of the City of Henderson unauthorized. Likewise, any amount of payment required to be made by the City of Henderson under the above mentioned contract is unauthorized, in excess of the limits of the indebtedness of the City of Henderson and void."

On December 4, 1953, the city of Henderson filed this suit for a declaratory judgment. While this suit was pending, and after completion of the improvements later in the same month, the city, on May 25, 1954, enacted an ordinance accepting the work, apportioning the cost, and levying a tax on the benefited property, which ordinance was published on June 12, 1954.

Under the general issue appellants contend that the advertisement of the letting of the construction contract did not conform to KRS 94.306, which provides:

"The advertisement shall be published in a newspaper of general bona fide circulation in the city, once a week for two consecutive weeks prior to the day set for the opening of the bids."

The date set for the opening of the bids was Monday June 29, 1953. The advertisement appeared in proper newspapers on Friday June 12, Saturday June 13, and one week later on Friday June 19 and Saturday June 20, and more than one week intervened from the last day of the advertise-

ment on Saturday June 20 until the opening of the bids on Monday June 29.

Appellants argue that since no advertisement appeared during the week of 7 days preceding June 29, the city failed to comply with the statute and, in effect, argue that "two consecutive weeks prior to the day set for the opening of the bids," means next before or immediately preceding the bid opening.

■ We cannot agree with this contention because the word, "prior," does not necessarily mean "next prior" to the happening of an event. The purpose of the statute is to give notice to interested bidders so that they may have sufficient time within which to examine the projects and make estimates as to building costs. Therefore the purposes of the statute were better served by this procedure where the prospective bidders were given an additional week to make their calculations. If this statute had in fact required that the advertisement be made on the Saturday prior to the Monday bid opening, some of the effectiveness of the advertisement would be lost because of the short period allowed for preparation of bids. In any event, we are not prepared to say that the word, "prior," as used, means "next prior."

In City of Olive Hill v. Howard, Ky., 273 S.W.2d 387, it was pointed out that some statutes place an emphasis on the number of times of publication rather than the minimum length of time. We believe this statute, KRS 94.306, falls within the category that limits the minimum number of times.

The owners next argue that the city, after having enacted ordinances for the improvement of 18 streets, only advertised for bids on and construction of 13 of the streets; that the selection of the streets to be advertised and contracted for was delegated to the city clerk without direction to him as to which streets were to be selected for improvement; and insist that since the streets to be constructed were not named by the board of commissioners— which can speak only through its ordinances and not otherwise—the selection of streets for advertisement was without legal authority.

The reason why the city did not improve all of the 18 streets named in the ordinances seems to lie in the fact that between the time of enactment of the ordinances and the final action of the board in ordering advertisement, a good number of these streets had been repaired by private contract between the abutting owners and H. K. Williams Company, a road contracting company. Being faced with a situation where, in order to proceed under the ordinances, it would be necessary to remove the surface and begin new construction of the streets, the board deemed it a wiser course to leave untouched those portions which had been repaired.

We believe the board of commissioners recognized the true facts of the situation because, at a meeting held May 25, 1953, it took this action:

"Moved by Commissioner Pearce seconded by Commissioner Sights, that the City Engineer be directed to immediately submit plans and specifications for the paving of such streets as should now be paved and that as soon as said plans are received and approved by this Board that said Streets be advertised for permanent paving."

On June 8, 1953, it specifically set out in a resolution:

"Whereas, certain of said streets referred to in said Ordinance have been improved by black top surface and do not require further permanent improvement, and on certain other said streets it has been determined that the specifications for said improvements should be changed, and with said changes and omissions therefrom it is the desire of this Board that bids be received and for permanent improvement, now therefore:

"Be It Resolved by the Board of Commissioners of the City of Henderson, Kentucky, that the Mayor be authorized to direct the City Clerk to advertise for bids upon the streets and

portions thereof in accordance with specifications prepared by Johnson, Deep and Quisenberry and approved by the City Engineer."

■ The revised specifications included only the streets which were later advertised and although the two actions of the board of commissioners were not artfully recorded, yet we believe the intention of the board is plain, particularly when we bear in mind the admonition in KRS 94.314 that:

"No error in the proceedings of the city legislative body shall exempt any property from the lien for the improvement tax, or the payment of the tax, after the work has been done and accepted. The city legislative body or the courts in which suits are pending shall make all corrections, rules and orders to do justice to all parties concerned."

Furthermore, we have held that in the absence of a specific showing of prejudice to the remaining property owners, a city has authority to let a contract for only part of the work contemplated by an ordinance. Janutola & Comadori Construction Co. v. Taulbee, 211 Ky. 356, 277 S.W. 477.

■ The owners urge that the plans and specifications on which the contract for improvement was awarded and advertised were not duly approved by the legislative body of the city. They point out that the ordinances provided the work should be done in accordance with plans and specifications then on file (April 13, 1953), and that the plans for the streets were revised on April 14 and June 14, 1953, and these plans were not specifically approved by the board of commissioners. In answer to this, we think it sufficient to point out that on May 25, 1953, the city by resolution, ordered its city engineer to submit plans and specifications for the improvements and, by resolution of June 8, 1953, determined that the specifications for the improvement should be changed.

It was further ordered that upon these plans and specifications, with said changes

and omissions therefrom, bids were to be received for the improvements. This situation is quite different from that presented in City of Hartford v. King, Ky., 249 S.W. 2d 13, where the entire matter of improving sidewalks, including the terms of the contract and the selection of which portions should be improved, was delegated to the city engineer because here the original ordinances themselves set up a definite standard concerning construction and material and properly leave the technical details to the engineer. Here, a part of the ordinance reads:

"* * * that the portions of said streets named in the caption hereinafter described be improved by excavating, grading and draining the same and by paving the same with either Portland cement concrete pavement, bituminous surface (penetration method) or bituminous surface (hot mix method) or other bituminous or concrete paving, upon a base of concrete, stone or other suitable material, and by the construction thereon of necessary curbs and gutters and the construction of catch basins, inlets and necessary gradings on said streets and portions thereof, and draining said streets, as herein provided, under a contract to be hereafter let."

In addition, the plans and specifications, as fully revised, were on file in the office of the city clerk at the time the contract was advertised and were sufficiently designated and adopted by the board. All prospective bidders had ample notice of the quality and quantity of work to be performed and we cannot conceive in what manner the property owners were prejudiced.

The owners next complain that the bond executed by R. B. Tyler Company with the National Surety Corporation as surety did not comply with the statutes and ordinances, therefore it did not protect the owners and was defective. KRS 94.307 reads:

"The city legislative body *may* require bond of the contractor for any public improvement, with surety, for

the performance of the work in accordance with the contract, and a guarantee of the work for such time as the city legislative body may require." (Our emphasis.)

The ordinance, by its terms, indicated that it would be necessary to execute a bond which would guarantee the performance of the contract and "to guarantee the said improvements against defects in workmanship and materials for a period of five years from the date of acceptance for such work." The bond actually executed, which appears to be on a stereotyped form, complied with the mandate of the ordinance with the exception that it contained a provision that no suit shall be brought on the bond after two years from the date on which the final payment of the contract falls due.

Initially we wish to point out that the contract under which R. B. Tyler Company was working provided that the job would be guaranteed for five years during which time the city would have recourse to them on this obligation if material defects developed. The bond executed, however, is not in exact conformity with the one called for in the ordinance, but we believe this fact does not relieve the owners from payment for the streets by which they have been benefited. The two year period set in the bond was sufficient time to determine whether or not the workmanship was defective and if the property owners believed that the two year limitation was too short, the question should have been raised within a reasonable time after the bond was executed and the owners should not have waited until the work, to all practical extent, was completed and accepted by the city. See Blanton v. Town of Wallins, 218 Ky. 295, 291 S.W. 372. By the use of the word, "may," in the statute above quoted, broad discretion is permitted the city in connection with the execution or the omission of the bond and in this case we find that the owners have not been prejudiced.

It is next urged that the owners were discriminated against because some people who owned property abutting on some of the streets originally included in the proposed program, were not later included because they had had their streets blacktopped under a private contract with H. K. Williams Company at their own expense. KRS 94.311 seems to give some power of discrimination to the legislative body because it provides that it may in its ordinance apportioning and levying taxes, make allowances and grant credit to property owners for improvements previously made by them to the extent that such existing improvements are of value and utility as a part of the improvement for which the improvement tax is levied. If the city has such power after the fact, we certainly believe it has the right to eliminate such property if the road is of sufficient value before the improvement is let and it would, in fact, be a wicked thing to tear up such an improvement and substitute therefor one contracted for by the city. In any event, the property owners who made their own improvements are still subject to the right of the city to make an original improvement to the street if the conditions in the street demand it.

By the foregoing we have discussed the main contentions of the property owners. The minor contentions we believe may be disposed of by the generalizations that they were not raised in time and many of them were cured by the fact that the city accepted the work as done under the contract.

The special issues were raised as to particular streets. It is contended that the description of Gabe's Lane or Meadow Street failed to meet the jurisdictional requirements of the statute in that the published resolution failed sufficiently to describe that portion of the street intended to be improved.

The main contention seems to arise from the fact that the southerly terminus of Meadow Street is a railroad fill with the result that the nomenclature of the ground upon which the tracks lie has not been fixed with a high degree of clearness. The railroad tracks proceed along this street past the end of Meadow Street, and about 1,000 feet from the point where Meadow Street

bisects the railroad tracks the extension of the line upon which the tracks have been laid becomes Bailey Street. Various maps and exhibits filed are not too plain as to the correct name of this street. On the other hand, we believe from all of them may be gained the correct impression that the description used in the resolution was perhaps as good as any that could be obtained under the circumstances. The designations contained in the resolution and ordinance are in substantial compliance with the jurisdictional requirements of the statutes. It is difficult to conceive how any one could be misled concerning the portion of the street proposed to be developed when consideration is given to any of the maps or plats filed and certainly it would be easier to understand it if one is familiar with the vicinity.

We come now to the cross appeal. The trial court adjudged that the city did not have jurisdiction to improve River Street at the expense of the abutting owners because it was not described in the body of the improvement ordinance. The decision of this question requires an additional statement of fact.

■ On March 24, 1952, the board adopted a resolution under subsection (2) of KRS 94.292 declaring a necessity for the improvement of certain streets and included was River Street in Riverdale Addition. On July 28, 1952, an ordinance was passed for the improvement of various streets. In the title of this ordinance, along with other streets, was designated River Street in Riverdale Court. In the body of the ordinance a particular description of each of the other 12 streets was given along with detailed measurements and elevations, but, by some inadvertence, a detailed description of River Street was omitted. The ordinance also provided that the construction should conform to plans and specifications for work on file with the city clerk and with the city engineer "which are made a part hereof and are hereby approved and adopted." The plans and specifications which are made a part of the ordinance by

reference included particular information as to the construction of River Street.

On June 8, 1953, by a resolution which recognized that certain streets had been improved, it was determined that the specifications for improvements should be changed so as to eliminate them. By the resolution adopted, the mayor was authorized to direct the clerk to advertise "for bids upon the streets and portions thereof in accordance with specifications prepared by Johnson, Deep & Quisenberry and approved by the city engineer." Pursuant to this authority, advertisement was had— and first on the list was River Street. Thereafter, the bids were made and accepted, the construction had and accepted by the city, and the cost apportioned.

We think this statement of fact is enough to show that the board sufficiently designated River Street as part of the construction, and that no one was misled because an elaborate description of River Street was not given in the original ordinance. If the ordinance had, in fact, left out all detail as to all the streets, the reference to and incorporation of readily accessible plans and specifications were sufficient.

Moreover, by ordinance adopted April 12, 1954, the board corrected the omission in the ordinance of July 28, 1952, and there gave River Street the same treatment which had been given the other streets. We think it unnecessary here to discuss the question of whether an ordinance may correct a former ordinance by nunc pro tunc proceedings although in Frankfort Kentucky Natural Gas Company v. City of Frankfort, 276 Ky. 199, 123 S.W.2d 270, 272, it was said:

"The general rule with reference to the entry of nunc pro tunc orders is that when it can be seen by reference to a record what was intended to be entered but by inadvertence or mistake on the part of the judge or clerk it had not been, the same may be put to record as of the date it should have been done by a nunc pro tunc order. These rules in respect to entering and signing orders are generally applicable to municipal legislative bodies and adminis-

trative or quasi judicial commissions. Hoskins v. Pitman, 229 Ky. 260, 16 S.W.2d 1052." See also: Ricketts v. Hiawatha Oil & Gas Co., 300 Ky. 548, 189 S.W.2d 858.

The discussion is unnecessary, because, as we pointed out above, KRS 94.314, which is part of the chapter under which these public works proceedings are had, provides that the city legislative body shall make all corrections, rules and orders to do justice to all parties concerned and we assume the contractor who has furnished the labor and material is one of those parties included. Therefore we cannot agree with the trial court judgment insofar as it was held the property owners on River Street were not liable for costs of the street improvement. This holding eliminates from discussion that part of the judgment which required the city to pay out of its general funds to R. B. Tyler Company for the improvement of River Street.

In the brief filed by appellants, they recognize that it is a policy of the law to overlook innocent mistakes involving technical errors of governing bodies in proceedings for public improvements, but insist that the law should not permit public officials to acquire jurisdiction to levy a tax against its citizens in direct violation of mandatory statutes and we accept the philosophy of this statement. However, the nature of the undertaking is such that the citizens themselves are charged with positive duties, among them being the duty to take positive and appropriate action in cases where they know the governing body has either wilfully or by inadvertence failed to comply with every technicality of the law. We have many times held that a property owner will not be permitted to stand by and allow the street in front of his property to be improved and avoid the cost of the improvement without first making a proper legal objection, particularly in cases like the one presented here where the record demonstrates every evidence that the property owners on River Street were well familiar with all the proceedings. It is true that in the case at bar the property owners filed a protest—which we copied a long time ago in this opinion—but an examination of this instrument shows that the objections were mere generalities or were based on faulty legal premises. We think the duty is to point out specific errors.

We believe it to be a common practice for owners to object to the building of a street and we take judicial knowledge of the fact that seldom is any improvement made without objection. So if a property owner has a specific sufficiently legal objection, he should state it certainly. See Chesapeake & O. R. R. Co. v. City of Olive Hill, 231 Ky. 62, 21 S.W.2d 127; Blanton v. Town of Wallins, 218 Ky. 295, 291 S.W. 372, 373; Peicke v. City of Covington, 198 Ky. 683, 249 S.W. 1008; and Ormsby v. City of London, 220 Ky. 118, 294 S.W. 1025.

The last question raised by the city concerns that part of the judgment which extended the time within which property owners could exercise their option under KRS 94.316 and 94.317 to select the 10-year installment plan or to pay cash. When we remember that before the completion of the improvements, the city instituted this declaratory judgment suit and compelled the property owners to join in the litigation, it seems only fair that the period for exercising the option could properly be deferred until 30 days after the determination of the circuit court and until 30 days after the mandate of this court. See Board of Councilmen v. Jillson, 225 Ky. 61, 7 S.W.2d 859.

Wherefore the judgment is affirmed on the original appeal; and reversed in part and affirmed in part on the cross appeal; and the case is remanded to the circuit court for proceedings consistent with this opinion.