## Massey v. City of Bowling Green, et al.

(Decided January 20, 1925.)

### Appeal from Warren Circuit Court.

1. Municipal Corporations—Erection of Hospital on Property Purchased for Water Works Not "Sale or Incumbrance."—Where property purchased by city for water works purposes was more than sufficient for such purpose, erection of hospital upon portion of such property would not constitute a "sale or incumbrance" of such property in violation of Kentucky Statutes, section 3290a.

2. Covenants—Provision in Deed of Land to City Held Not Restriction by Grantor Prohibiting Erection of Hospital Thereon.—Where property purchased by city for water works purposes was more than sufficient for such purpose, provision in deed of portion of such property that it was purchased for water works purposes, but that such provision forms no part of consideration, did not constitute a restriction by grantor prohibiting city from erecting hospital on such property.

3. Municipal Corporations—City Purchasing Property for Park Cannot Devote it to Purpose Inconsistent Therewith.—Kentucky Stat-

utes, section 3290, subsection 33, authorizing establishment of parks, makes no provision for their disposal or abandonment and, in absence of legislative authority, where city purchases or condemns land owned by it for park purposes and establishes same, it apparently cannot devote such land to other purposes inconsistent therewith.

4. Municipal Corporations—Clear Intention to Devote Property for Park Necessary to Constitute Dedication.—To irrevocably establish a public park or dedicate municipal property thereto by user, action upon part of city continved for such length of time as to manifest clear and unequivocal intention to devote property only to that purpose is necessary.

5. Municipal Corporations—Court Will Not Imply Dedication of Park from Mere Use of Property.—Where property purchased by city for water works purposes was more than sufficient for such purposes, and portion thereof was used as a park for many years and improved by construction of roads, but was not formally dedicated for park purposes, court will not imply a dedication or irrevocable establishment of park, and hence city was not prohibited from erecting a hospital on such property.

6. Municipal Corporations—Hospital Held Established and Erected by Ordinance.—Where city council selected building site for erection of hospital, directed issuance of bonds and erection of building, and authorized board of public works to proceed with building, and later also fixed site by resolutions, which were publicly read twice and approved by majority of council by yea and nay vote, as required by Kentucky Statutes, section 3279, held that hospital was established and erected by ordinnace as required by section 3290, subsection 4. even though selection of site was adopted by resolution.

7. Municipal Corporations—Board of Public Works Held to have Properly Advertised for Letting of Contract Subsequently Ratified by Council.—Where city council determined on construction of building and selected an architect, it was proper for board of public works to advertise letting of contract without being authorized by ordinance, and by subsequent ratification by council board's action became as binding as if directed by council in first instance; there thus being a compliance with Kentucky Statutes, section 3440.

P. H. SIMS and GUY H. HERDMAN, amici curiae.

G. D. MILLIKEN and W. B. GAINES for appellant.

CHANEY & DIXON and RODES & HARLIN for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS—Overruling motion to set aside submission and affirming.

In the city of Bowling Green at the regular November, 1923, election there was voted a bond issue in the sum of $125,000.00 for the construction of a city hospital.

In this action, appellant, a taxpayer, seeks to enjoin the issual of the bonds and the construction of that building on certain property purchased by the city for water works purposes. A number of irregularities in the proceedings of the council and some constitutional questions have been raised.

An agreed stipulation of fact was filed in the lower court and a motion entered for a temporary injunction therein, which was refused, whereupon plaintiff entered a motion for a temporary injunction before a judge of this court upon the record then existing; that motion was considered by four members of this court and it was their opinion that the injunction was unauthorized, and it was refused and a written opinion delivered by the justice before whom the motion was made, all concurring therein.

On a return of the case to the lower court, it was submitted for final judgment upon the same record, and a judgment entered dismissing the petition. The plaintiff has appealed, and by agreement the case has been advanced for hearing and submitted. Many of the questions raised and passed upon in the former motion are neither new nor novel, and as we concur in the opinion and ruling therein, it is not deemed necessary to set them out in this opinion.

On this appeal *amici curiae* have filed briefs, by which it appears that a suit filed by them and styled, J. K. Barr v. City of Bowling Green is pending in the Warren circuit court, involving the same questions here raised, and in which emphasis is laid upon the question that the city is without power to locate the hospital at the place designated in the contract of construction. It is argued that, while this question is raised in the pleadings in this case, it has not been fully developed in the evidence and cannot be properly considered herein; that a final judgment now rendered on an incomplete record will become *stare decisis,* and thereby be prejudicial to the plaintiff in the second suit, and for that reason a determination of this appeal should be postponed until a final judgment is had in that case, and the record in it brought up on appeal.

This is disputed by appellees, who file with their brief a copy of the petition in the other case, together with the deeds relied upon by plaintiff therein. A copy of Barr's amended petition is also made a part of the record.

The water works company was incorporated by a legislative act of 1866, as amended by similar acts of 1868 and 1880. By those acts the company was authorized to issue bonds, with a lien on its property for security. The city of Bowling Green was authorized to take all the stock of the company and issue bonds in payment thereof to be secured by a lien on the water works property. This the city did; and bonds thus issued and secured to the extent of $85,000.00 are alleged to be now outstanding.

Beginning in 1868, the city has purchased several contiguous pieces of property, in all containing about 12 acres. The conveyance to the city of these properties was in each instance a straight deed without any restriction, condition or qualification unless a sentence appearing in the habendum of the deed from — Crosswaite, executed in 1869, constitutes a restriction. It reads:

"The land hereby conveyed is purchased by the town of Bowling Green for water works purposes, but this forms no part of the consideration to the party of the first part."

A reservoir embracing about two acres has been constructed in the center of the grounds, and no other part of it is used for water works purposes, and it does not appear that any more will be needed for that purpose, at least for years to come.

The ground proposed to be appropriated for the hospital is a part of this land. It embraces three-fourths of an acre, of high, unimproved land at the northwest corner of the boundary, some distance from the reservoir, and is admirably located for the purpose in view.

It is argued, first, that under the Crosswaite deed the city cannot appropriate any of this land for a hospital, reliance being had on section 3290a, Ky. Statutes, which reads:

"That no city of the third class, or town which is, or may hereafter be, the owner of any water works system, or lighting system by gas or electricity, shall sell, or convey or lease or mortgage or otherwise encumber the same, or the income therefrom, without the assent of two-thirds of the total number of legal voters of such city or town voting at the election held for that purpose, to be held only after 60 consecutive

days' notice thereof, next before such election, published in said city or town, in the newspaper having the largest circulation therein.''

We do not think this ground tenable. From the record the only use the water works company has for the land is for its reservoir. As now constructed the reservoir is amply sufficient in size; and if the property in question is appropriated to the hospital, the remainder of the tract will be more than sufficient for an indefinite expansion of the water works system; hence it cannot be impaired by an appropriation of this spot for the purposes indicated.

Although the land is under a lien to secure the payment of the water works bonds, an appropriation of a part thereof by the city to its own use in the establishment of a hospital would not release the lien or be inconsistent with it, but the erection of a building thereon would add to the security of the bondholders.

In view of this lien a question might be raised as to whether the city would desire to place a building thereon to cost over $100,000.00. But the property belongs to the city and it will continue to control both the water works and the hospital, though conducted by separate departments of the municipal government, and the wisdom of the procedure is for the council to determine and not for us. Certainly it is not a sale or encumbrance upon the water works property as contemplated by the statute quoted.

Nor is the provision in the Crosswaite deed a restriction by the grantor. It evidences a straight sale so far as he is concerned, and disclaims any consideration arising out of the use of the property. True, it indicates the purpose for which the city purchased the property but certainly that provision was never intended to obligate the city to retain twelve acres of land, where only two were needed.

It is next argued that all this property has been appropriated for park purposes and that no authority has been given to the city by the legislature to dispose of it, or to devote it to any other purpose. It is stated that Bowling Green is an enterprising city of between twelve and fifteen thousand people. Aside from a small tract of land in the center of the business section consisting of about two acres, and known as ''Fountain Square'' it has no public park, and unquestionably it is highly desirable

to have another. While there has been no formal dedication or appropriation of this land for a park, it has been used as such for many years. The city has placed roads around and through it. On the maps of the city it is laid down and designated as "Reservoir Park." Various ordinances have been passed from time to time by the council with reference to policing it, in which it is referred to as "Reservoir Park," and by long user the public has acquired an easement therein for park purposes, and now the city cannot, without legislative authority divert its use to any other purpose. It is further argued that the location of a hospital on the grounds of a park devoted to recreation and enjoyment is inconsistent with its use as a park and a diversion from the purposes for which it was established.

It may be assumed that the latter proposition is correct. It also may be conceded that, where land is dedicated to a city by private grant for park purposes, its use is restricted by the terms of the grant, and that it acts as a trustee for the donor and is without authority to appropriate any part of it to a different purpose, even by express legislative authority. City of Hopkinsville v. Jarrett, 156 Ky. 777, and authorities there cited.

Further, Ky. Statutes, section 3290, subsection 33, authorizes the establishment of parks by the general council of cities of the third class, but makes no provision for their disposal or abandonment; and in absence of such legislative authority it would seem that where such a city purchases, condemns or formally appropriates lands owned by it for the purposes of parks, and establishes same, it may not dispose of or devote such land to other purposes inconsistent therewith. 28 Cyc., page 935; 20 R. C. L., page 646. See also cases cited in monographic notes, 25 L. R. A. (N. S.) 989; 27 L. R. A. (N. S.) 939.

However, it is not claimed that the lands in question have been appropriated to park purposes in any of the ways mentioned Hence, the primary question remains, will a dedication or an irrevocable establishment of a park be implied by reason of its use in the manner set out during the time mentioned?

We do not think such a presumption can be maintained. A city may own property for which it has no present use, and permit it to be used temporarily for any legitimate purpose; or property devoted to a specific use may become unsuited for that purpose and a change of use become necessary, and it cannot be contended that

every purpose for which it is thus used fixes its status irrevocably. If so a city dump would remain a dump forever, though by reason of abutting development it became highly desirable for other purposes. Indeed, under this theory the city would have no right to devote these grounds to park purposes, as they were acquired for use of the water works, and this would defeat the claim of dedication upon which reliance is had.

Public parks are essential to the proper enjoyment of urban life, and their establishment and maintenance should be encouraged in every legitimate way; but to irrevocably establish such a park or dedicate municipal property thereto by user, there should be such action upon the part of the city and so continued for such a length of time as to manifest a clear and unequivocal intention for the property to be devoted to that purpose only. Perhaps where a city has paid funds out of its treasury in making improvements for park purposes on lands owned by it to such an extent that it would be inequitable to abandon it or change its use, this might be construed as an establishment thereof.

The facts as claimed by *amici curiae* do not measure up to either standard. The substance of their contention is that the land was purchased and intended for water works purposes; that the portion not used for that purpose has been used as a park for many years and improved by the construction of roads thereon. It will readily be seen that the improvements suggested were of a character that would enhance the value of the land for any purpose, and it cannot be said that this would irrevocably establish a park. Indeed, it is claimed by the city that during the time mentioned, the grounds have been used for various purposes, including a barn for the city horses, location for a work house, storage shed for city machinery, and also for park purposes.

We may, however, omit this; and on the theory of *amici curiae* alone, as applied to the pleadings in this case, reach the conclusion that the council is not forbidden by law to select the designated location. It follows that an injunction is not authorized on above grounds.

It is unnecessary for us to decide whether it would have been proper to have postponed a hearing of this case if our conclusions had been otherwise on the points raised by them.

We are asked to express our opinion on two other matters not discussed in the opinion refusing the temporary injunction.

1. In February, 1924, the city council selected the building site. Subsequently, by ordinance duly passed in March, it selected an architect. On October 7 it directed the issual of the bonds and the erection of the building. On October 14 it approved the action of the board of public works in advertising for bids and awarding the contract, directed the mayor to execute a contract with the successful bidder in accordance with the architect's plans and specifications, and authorized the board of public works to proceed with the building.

In the meantime the board of public works had also fixed the site at the same place the council had selected in February. This was reported to the latter body and at two separate meetings held by it on October 20 and 24 the report of the board of public works fixing the site was read, and at each meeting a resolution approving same was unanimously adopted by a yea and nay vote.

It is now urged that the site should have been selected by ordinance, and that the resolutions adopting same are invalid and of no effect.

Section 3290, subsection 4, Ky. Statutes, provides:

"The common council . . . shall within the limitations of the Constitution and this act have power by ordinance . . . to establish and erect hospitals."

If an ordinance was necessary to select the site, it will be observed that the resolutions of October 20 and 24 were publicly read twice and passed by the council at two sessions held on different days; the yeas and nays being called and entered upon the journal, a majority voting for same on each occasion, and this embraces all the formalities required by section 3279, Ky. Statutes, in the enactment of an ordinance in cities of this class; and considering the matters involved the resolutions were equivalent to an ordinance. Robertson v. Southern Bithulithic Co., 190 Ky. 314; Dillon on Municipal Government, section 571; Gleason v. Barnett, &c., 115 Ky. 890; 19 R. C. L., page 895, section 194.

2. The board of public works properly advertised for the letting of the contract and received bids thereon, and reported same to the council, which awarded the contract and directed the mayor to execute a contract with the successful bidder.

It is suggested that under section 3440, Ky. Statutes, the board could not legally advertise until so authorized by ordinance.

The statute reads:

> "That when the said board shall deem it advisable to make a contract for the execution of any work, or purchase of any supplies or material for any matter under its charge, it shall cause to be made a careful estimate of the cost of such work or material. In all caess where the estimated cost of any expenditure exceeds ($500.00) five hundred dollars, the board shall transmit to the common council, with its recommendations, an ordinance authorizing the said expenditure with an estimate of the cost. Upon the passage of such ordinance it shall be the duty of the board to advertise and let the contract to the lowest responsible bidder."

The statute seems to contemplate the ordinance being passed before the advertising, but that is entirely immaterial here. The council had determined on the construction of the building at a cost of far more than $500.00; it had selected its architect; an advertisement was necessary, and it was proper for the board to do this advertising, hence it was a transaction that the council could ratify. It did this, and the board's action in that particular became as binding as if directed by the council in the first instance. It is admitted that otherwise the duty was properly discharged. It is not claimed that any bidder was prevented from bidding or anyone injured by this irregularity and it cannot be said that the ratifying of the contract was affected thereby.

Wherefore the motion to set aside the order advancing this case is overruled, and no error being perceived the judgment of the lower court is affirmed.