# Bedford-Nugent Co., Inc., et al. v. Argue.

Dec. 13, 1939.

Worsham & King for appellants.

Henson & Taylor for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

In 1905, the City Council of Henderson, by ordinance, dedicated and established a tract of land belonging to it as a park. The land thus dedicated was on the bank of the Ohio River and was named Givens Park. There is a deep ravine through part of it which has been used as a dump. No steps appear to have been taken to improve the area for use as a park. In 1924 the City leased a part of the land to the Henderson Sand and Gravel Company for a period of 16 years. The Company installed the necessary machinery and equipment and conducted its sand and gravel business there until February, 1935. At that time a new agreement was entered into under which the Company leased the property in question for another five year period, with the privilege of renewal for a like period. The Henderson Company assigned the lease to the appellant herein, the Bedford-Nugent Company, Incorporated, on the day the new lease was executed. The Bedford-Nugent Company has been conducting a sand and gravel business on the property since that time.

In April, 1937, the appellee, Mrs. Ella Argue, filed suit against the Bedford-Nugent Company and the City of Henderson seeking to have the lease voided and the Company enjoined from using the property for the conduct of its business on the basis that the use being made of the property was inconsistent with its establishment as a park in 1905. The Company's demurrer to the petition was overruled and it answered admitting the enactment of the ordinance in 1905, and the subsequent leasing of the property for the conduct of the sand and gravel business. It denied that the City had no legal right to grant the leases and also that it had conducted its business so as to be offensive to persons living in the neighborhood. It pleaded affirmatively that no part of the territory included in Givens Park was ever used for park purposes; that the area consisted principally of a deep ravine which was used as a city dump; that the leasing of the property by the City in 1924 constituted an abandonment and revocation of the dedication of the property for park purposes; that the appellee had resided near the area in 1924 and since that date, and that she knew of such abandonment and had not protested thereto and therefore had estopped herself to complain of the abandonment; and that the City Com-

missioners adopted an ordinance on June 7, 1937, repealing the 1905 ordinance establishing Givens Park. The City adopted the answer of the Company. The appellee's demurrer to the second and third paragraphs of the answer was sustained. The appellants declined to plead further and the judgment being appealed from herein was entered.

In his opinion sustaining the appellee's demurrer to the second and third paragraphs of the appellants' answer the chancellor said that the conduct of the Company's business was wholly inconsistent with the use of the area as a park; that the ordinance adopted June 7, 1937, after the institution of this action, which attempted to repeal the ordinance of 1905, was null and void and that the ordinance of 1905 was in full force and effect; that the City had no right to lease the area for the conduct of a sand and gravel business and that the lease and its assignments were null and void; that the Company should be and it was restrained and enjoined from further conducting its business on the property; and that it should remove its equipment and machinery from the premises.

The appellants insist that the court erred in adjudging the lease void and that the ordinance of 1905 in which the park was established was still in effect. The appellee relies upon the case of Massey v. City of Bowling Green, 206 Ky. 692, 268 S. W. 348, 350. The appellants insist that the Massey case is not controlling in the case at bar.

Section 3290-33 of the Statutes provides, among other things, that third class cities may acquire, establish and maintain parks. This section reads as follows:

"To acquire, establish and maintain public cemeteries, parks, squares, avenues, promenades and fountains, either within or without the city; to make all necessary appropriations for the cost and maintenance of the same, and to make regulations for the government thereof."

The Court had before it in the Massey case a situation where the city was attempting to establish a hospital on a piece of property that had been bought for waterworks purposes. The city had bought about 12 acres of ground, some two acres of which were used in

building a reservoir. The remainder of the property was used for park purposes, though it had never been formally dedicated for such purposes. On maps of the city the property was designated as "Reservoir Park," and various ordinances dealing with the policing of the area referred to it as "Reservoir Park." It was contended that the public had acquired an easement in the property for park purposes by its long use for such purposes, and that the city was without legislative authority to divert its use. The Court held that such a presumption could not be maintained.

In commenting upon Section 3290-33 of the Statutes it was said in the course of the opinion in the Massey case:

> "Further, Kentucky Statutes, Section 3290, subsection 33, authorizes the establishment of parks by the general council of cities of the third class, but makes no provision for their disposal or abandonment, and in absence of such legislative authority it would seem that, where such a city purchases, condemns, or formally appropriates lands owned by it for the purposes of parks, and establishes same, it may not dispose of or devote such land to other purposes inconsistent therewith. 28 Cyc. p. 935; 20 R. C. L. p. 646. See, also, cases cited in monographic notes 25 L. R. A. (N. S.) 989; 27 L. R. A. (N. S.) 939."

In the case of the City of Fulton v. Penny, 273 Ky. 465, 116 S. W. (2d) 963, 966, the Court said in commenting upon the opinion in the Massey case:

> " * * * It is also pointed out in that opinion that under the charters of cities of the third class the city has a right to acquire land for park purposes in the manner set out in the statutes, and when acquired in that manner the city may not dispose of or divert such land to other purposes inconsistent therewith. * * *"

As indicated, the question before the Court in the Massey case was, whether or not a dedication or irrevocable establishment of a park could be implied by reason of its use for such purposes. In holding that such a presumption could not be maintained, the Court went further and said that, since Section 3290-33 of the

Statutes authorized cities of the third class to establish parks, but made no provision for their disposal or abandonment, it would seem that where a park had been created, even by the dedication of its own lands, it may not dispose of or devote the land to other purposes. We believe this to be a sound rule and are disposed to follow it in the case now before us. In the general statement under the Annotation on Parks and their Uses in 18 A. L. R. 1247, it is said:

"The municipal authorities have power to devote park property to uses which are proper park purposes or consistent with the purposes of its dedication; but it is generally held that they can not divert park property from park purposes or the purposes of its dedication." See also 63 A. L. R. 492 and 20 R. C. L. 645.

In the case of Wright v. Walcott, 238 Mass. 432, 131 N. E. 291, 18 A. L. R. 1242, it was held that the legislature may authorize the leasing of land, which had been acquired by condemnation for a public park, for general commercial uses when it was no longer needed for the purposes for which it was acquired, but we are not confronted with such a question in this case. Clearly, Section 3290-33 of the Statutes makes no provision for the disposal or abandonment of property dedicated to park purposes in third class cities. Nor are we concerned with what the City might have done with the property in question had it not dedicated it for use as a park in 1905. True it was public property prior to its dedication, but thereafter the City held it in trust for the use of the public for park purposes. Nor are we concerned with whether the City should have developed the area after its dedication as a park in 1905. That is a question which addresses itself to the governing body of the City. Since the City Commissioners were not authorized by statute to dispose of or abandon a park, they had no authority to lease the property for the operation of a sand and gravel business.

Therefore, for the reasons given herein, the judgment is affirmed.