BERNARD L. RAYOR,

*Plaintiff and Respondent,*

v.

CITY OF CHEYENNE, a Municipal Corporation, and John J. McInerney, O. E. (Oc) Erickson, and A. W. Trout, as Commissioners of said City of Cheyenne, *Defendants and Appellants.*

(No. 2350; February 25th, 1947; 178 Pac. 2d. 115)

For the Defendants and Appellants, the cause was submitted upon the brief and also oral argument of John S. Miller of Cheyenne, Wyoming.

For the Plaintiff and Respondent, the cause was submitted upon the brief of Loomis and Lazear, and also oral argument of Clyde M. Watts and Edward T. Lazear, all of Cheyenne, Wyoming.

74

## OPINION

BLUME, Justice.

The plaintiff, Bernard L. Rayor, brought this action to enjoin the City of Cheyenne, a municipal corporation from constructing a highway through a park of the City. He alleges that plaintiff is a property owner, taxpayer and a resident of the City of Cheyenne, owning property adjacent to Holliday Park, hereinafter mentioned, and brings this action on behalf of himself and all others similarly situated; that he is in the real estate business, and in the years past took steps to improve and settle the then vacant and uninhabited area east of Holliday Park, and that he was responsible to a large extent in causing that area to be inhabited, in full reliance on the fact that Holliday Park was an area of land dedicated for park purposes; that the City of Cheyenne is the owner of a tract of land formerly known as Minnehaha Park and later known as Holliday Park; that the area thereof was dedicated by the City of Cheyenne as a park more than fifty years prior to the

filing of the petition; that the Park has been accepted and used by the public as a park and play ground continuously ever since; that the City of Cheyenne threatens to construct a highway through the Park to connect with Sixteenth Street of the City so as to make it a through highway; that such through highway is inconsistent with and destructive of its use as a park and would cause the scenic driveway now in the Park to become a speedway, and that plaintiff and others similarly situated with him would be deprived of their right to use and enjoy the Park for purposes of pleasure, recreation and amusement; that a new school house was recently built just east of the Park and that the through highway would be a menace to the children attending the school. The City of Cheyenne appeared by its attorney and filed a demurrer on the ground that the petition failed to state a cause of action. The trial court overruled the demurrer and the City electing to stand on its demurrer judgment was rendered in favor of the plaintiff, restraining and enjoining the City from building a through highway across Holliday Park, and from opening up Sixteenth Street through and across the Park. From that judgment the City has brought this case to this court by direct appeal.

So far as we have been able to find there was no specific legislation relating to parks in this state until 1907 when the Ninth Paragraph of Sec. 29-2301, Compiled Statutes of 1945, was passed which, among other things, provided that all cities and towns in this state should have power to contract for, purchase and hold lands for public parks, and to make rules and regulations for the protection, maintenance and beautifying of such parks. The only provision relating to the disposition of parks appears to be Sec. 29-118, Wyo. Compiled Statutes of 1945, which was passed by the Legislature in 1941, giving all cities and towns the power to

sell, convey and transfer property acquired or held for park purposes when such city or town has held title to such property for more than twenty years and no substantial use has been made thereof for park purposes for such period.

I.

We take it under the allegations of the petition that the City of Cheyenne owned the land embraced within Holliday Park in fee, dedicating the land for park purposes more than fifty years ago. There was then, as indicated above, no specific power granted by the legislature to acquire and hold property for park purposes. However, the Park has been held under legislative power since 1907, as above mentioned. Furthermore, it is stated in 3 McQuillan, Municipal Corporations, Revised Edition, 1046, that "unless restricted by law, a municipal corporation may transfer, donate or dedicate property for particular public uses, especially if such purposes are calculated to advance the governmental and municipal interests of the locality." So it is said by Dillon, Municipal Corporations, 5th Edition, Sec. 1078, that "a city or other municipal or public corporation may, unless restricted by charter or statute, dedicate to public use land of which it is the proprietor." See also State vs. Woodward, 23 Vt. 92. So we may accept as settled that the Park was legally dedicated and used for park purposes. In fact that is not questioned by counsel for the City.

II.

We must now examine the general principles which are applicable in a case such as that before us. The exercise of the power of eminent domain is not in question in this case, so we need not consider that. When the City dedicated the area in question for a public park, it constituted itself and became the trustee for

the general public, and could not divert it to any other use, except as hereinafter mentioned. 44 C. J. 1100. If, said the court in Warren vs. The Mayor of Lyons City, 22 Iowa 351, 357, property dedicated to one public use can be diverted to another use at pleasure, "we can scarcely conceive of a doctrine which would more effectively check every disposition to give for public or charitable purposes." The dedication here was to the general public. That general public is not confined to the citizens of the municipality, but embraces all the people. These are represented, not by the municipality, but by the legislature of the State. Hence, the control of public parks, as of other governmental property, belongs primarily to the state and not to the city or town, and the latter have only such power as may be delegated to them. Higginson vs. Slattery, 212 Mass. 583, 99 N. E. 523, 42 L. R. A. (N. S.) 215, and cases cited. Wright vs. Walcott, 238 Mass. 432, 131 N. E. 291; 18 A. L. R. 1242; 44 C. J. 1100; 18 C. J. 80. In Hartford vs. Maslen, 76 Conn. 599, 611, 57 Atl. 740, the court, expressing the same thought, said, among other things: "But the control of public parks belongs primarily to the State . The authority which the common council or park commissioners of a city may exercise in the control and management of public parks is not derived from the citizens of the municipality within the limits of which such parks are situated, but from the legislature. Such public parks are held not for the sole use of the people of a particular municipality but for the use of the general public which the legislature represents. Municipalities in controlling and managing such public parks act as governmental agencies, exercising an authority delegated by the State, and are always subject to legislative control."

If a dedication of property for public use is by a private party, not even the legislature can authorize pro-

perty thus dedicated to be used for any other purpose, since that would violate the contract between the dedicator and the public. 44 C. J. 1100. That rule should, perhaps, be modified to some extent, if, at the time of the dedication, the city or town had power, granted by the legislature, to vacate or abandon the dedicated property. Lloyd vs. City of Great Falls, 107 Mont. 442; 86 Pac. 2d 395. We are not here, however, concerned with property dedicated for a public purpose by a private party and need not pursue the discussion in that connection. The dedication here was by the City of Cheyenne, of property which was owned in fee, and a different rule has come to be recognized in such case by the courts. Since the legislature has general control over municipalities in the state and also, as above mentioned, represents the general public, it has even been held, though that might not be the holding in all jurisdictions—that it may, in such case, authorize that property held by a municipality for one public use may be used by the state for another public purpose, without consent of the municipality. 1 McQuillan, supra, Sec. 240. See also 39 Am. Jur. 811, 812. Or the legislature may in such case grant to the municipality authority to devote the property to another public use or relieve it from the trust. 44 C. J. 1100, 1101; 26 C. J. S. 156; 39 Am. Jur. 816. But the authority thus granted to a city or town must be plain. See Dillon, supra, Sec. 1102. In the case of Higginson vs. Slattery, supra, the court stated that "land appropriated to one public use cannot be diverted to another inconsistent public use without plain and explicit legislation to that end." In Williams vs. Gallatin, 229 N. Y. 248, 128 N. E. 121, 18 A. L. R. 1238, the court stated, among other things:

"A park is a pleasure ground set apart for recreation of the public, to promote its health and enjoyment. Perrin v. New York C. R. Co. 36 N. Y. 120, 124. It need not, and should not, be a mere field or open space, but

no objects, however worthy, such as courthouses and schoolhouses, which have no connection with park purposes, should be permitted to encroach upon it without legislative authority plainly conferred, even when the dedication to park purposes is made by the public itself and the strict construction of a private grant is not insisted upon."

In the case of District of Columbia vs. Cropley, 23 App. Cases, (D. C.) 232, the court, speaking of streets and sewers, stated as follows:

"The right in and control over all the streets and sewers of the city are held by the municipal government for public use, and to no other use or purpose can they be appropriated, without special legislative sanction. 'It would,' says the Supreme Court, 'be a perversion of that trust to apply them to other uses.' Meriwether v. Garrett, 102 U. S. 513, 26 L. Ed. 204. The same principle is laid down by Dillon, in his work on Municipal Corporations, § 650, where he says: 'A municipal corporation has no implied or incidental authority to alien, or to dispose of, for its own benefit, property dedicated to or held by it in trust for the public use, or to extinguish the public uses in such property.' And clearly, if the corporation has no implied or incidental authority to dispose of or extinguish the public use in such property, it has no such power to restrict the use in such manner as to impair the right of full enjoyment thereof by the public, except it be by express legislative authority."

In Massey vs. City of Bowling Green, 206 Ky. 692, 268 S. W. 348, the court said, among other things:

"Further, Ky. Statutes, section 3290, subsection 33, authorizes the establishment of parks by the general council of cities of the third class, but makes no provision for their disposal or abandonment; and in absence of such legislative authority it would seem that where such a city purchases, condemns or formally appropriates lands owned by it for the purposes of parks, and establishes same, it may not dispose of or devote such land to other purposes inconsistent therewith."

In the later case of Bedford-Nugent Co. vs. Argue, 281 Ky. 827, 137 S. W. 2d 392, the court, after referring to the case of Massey vs. City of Bowling Green, stated as follows:

"As indicated, the question before the Court in the Massey case was, whether or not a dedication or irrevocable establishment of a park could be implied by reason of its use for such purposes. In holding that such a presumption could not be maintained, the Court went further and said that, since section 3290-33 of the statutes authorized cities of the third class to establish parks, but made no provision for their disposal or abandonment, it would seem that where a park had been created, even by the dedication of its own lands, it may not dispose of or devote the land to other purposes. We believe this to be a sound rule and are disposed to follow it in the case now before us. In the general statement under the Annotation on Parks and their Uses in 18 A. L. R. 1247, it is said: "The municipal authorities have power to devote park property to uses which are proper park purposes or consistent with the purposes of its dedication; but it is generally held that they can not divert park property from park purposes or the purposes of its dedication'."

III.

We come then to examine the specific rule which should be applied in the case at bar. Annotations on the subject are contained in 18 A. L. R. 1247; 63 A. L. R. 484 and 144 A. L. R. 486. In these annotations is considered the subject as to whether or not a particular use made of property dedicated as a park is inconsistent therewith. Among the subjects considered is that relating to streets. The City of Cheyenne, in the case at bar, has, of course, the power to open up streets and new streets, a power which doubtless has been conferred upon every municipality in the United States, but that power is not a special or express power to establish a highway through a park, On the contrary it is said in the annotation in 18 A. L. R. 1248, as well as

in the subsequent annotations on the same subject, that "the cases generally hold that a public highway cannot be laid out by a municipality upon park lands, meaning by 'public highway' a part of the street system of the municipality, as distinguished from the park roads established to give the public access to the different parts of the park." Thus In Re Central Parkway, City of Schenectady, 140 Misc. Rep. 727, 251 N. Y. S. 577, it was said:

"Land acquired by a municipality by purchase or condemnation held strictly for public use as a park and not subject to the terms of any gift, devise, grant, bequest, or other trust or condition is under the control of the Legislature. The municipality holds the property in trust for the use of the public, and cannot use or permit its use for purposes other than those for which it was dedicated or acquired or appropriated. The Legislature may delegate to municipal corporations the regulation and control of property held for public uses. * * *

"However municipal corporations cannot without express authority from the Legislature appropriate any part of the public park to laying out streets and public highways because these uses are inconsistent with and destructive of park uses. Public parks cannot be cut up and portions thereof diverted at the pleasure of municipal bodies. Legislative permission is necessary to accomplish such a result. The Legislature may authorize the construction of a highway in the park; the city cannot. * * *

"When the city officials attempted to detach this strip of land from the park of which it was an integral part and to improve it for the purpose of converting it into a public highway, their plan was impossible of accomplishment for want of power."

In Sebring vs. Quackenbush, 120 Misc. Rep. 609, affirmed in 214 App. Div. 758, 209 N. Y. 918, an obstruction at the entrance of a public park shut the park off from a public highway. The municipality attempt-

ed to remove this obstruction so as to permit the highway to be extended through the park. The court held that this obstruction could not be removed, and said: "The park having been legally created, the city officials had no right to discontinue it, without direct authority from the Legislature to do so." In People ex rel vs. Mosier, 112 N. Y. S. 307, the city attempted to construct a highway through a park. It was held that this could not be done, the court saying in part: "There is no statute under or by virtue of which the defendants could have made said strip of land a public highway. They had no proprietary right or interest in the park lands, nor the right or power to dispose of any such interest; nor did they have the right to consent that any of such lands be used otherwise than for park purposes as distinguished from public highway."

IV.

Counsel for the city have cited and rely upon Reichelderfer vs. Quinn, 287 U. S. 315, 53 S. Ct. 177, 77 L. Ed. 331, 83 A. L. R. 1429; Spinks vs. City of Los Angeles, 220 Calif. 366, 31 Pac. 2d 193; Ritzman vs. City of Los Angeles, 38 Calif. App. 2d 470, 101 Pac. 2d 541; City and County of San Francisco vs. Linares, 16 Calif. 2d 441, 106 Pac. 2d 369. The cases are not in point and are fully consistent with what has heretofore been stated. In each of these cases special legislative authority had been given to construct the highway through the park or use the park or parts thereof for other purposes. In fact in some of these cases the authority which was granted by the legislature is italicized. Nor are the citations in McQuillin, Municipal Corporations, Revised Ed., Sec. 1257, contrary to what has heretofore been stated. Thus in Sharp vs. City of Guthrie, 49 Okla. 213, 152 Pac. 403, the municipality had been given specific legislative power to alienate the land in question. In Seattle Land & Improvement Co. vs. City

of Seattle, 37 Wash. 274, 79 Pac. 780, it appears that the municipality had been given specific legislative power to vacate parks. The decision in Keaton vs. Oklahoma City, 187 Okla. 593, 102 Pac. 2d 938, is based upon specific legislative power in regard to zoning the city. The remainder of the cases cited by counsel also show specific legislative power given the municipality to make encroachments sought to be made upon public property.

It would, accordingly, seem clear, under the pleadings before us that the judgment of the district court should be, and is affirmed.

RINER, C. J., and KIMBALL, J., concur.