**SHAMBURGER, County Judge, et al. v. DUNCAN, County Attorney.**

Court of Appeals of Kentucky.
Dec. 21, 1951.

tion and development of its natural resources and adding to its wealth (Annotations, 13 A.L.R. 2nd 1081), enacted a statute authorizing the fiscal court of any county to acquire and maintain lands for "a permanent public forest". Acts of 1946, Chapter 93, KRS 149.200 et seq. Jefferson County acquired an area of about 2,000 acres as such a forest. It includes a tract of 168 acres on the edge of the forest which was formerly used as a clay pit or mine with facilities for the manufacture of sewer pipe. To "a certain extent" it is denuded land. The conveyance was in fee simple without restriction as to its use. However, the recorded action of the fiscal court and the method of acquisition evidenced the purpose of its purchase, for which $3,365 of tax revenues were paid. The conditions and restrictions of the statute are in legal effect the same as if expressed in the deed.

It was recently discovered that this tract contains shale suitable for the making of light aggregate, which has many uses in the building industry, especially in the manufacture of concrete blocks. The fiscal court and the Jefferson County Forest Commission (an advisory body doubtless created under the terms of KRS 149.270) determined it would be to the public interest to execute a mineral lease of the tract for the term of fifty years for the mining of the shale. In response to advertising, the Ohio River Sand Co. submitted an offer to lease the property upon a royalty basis. It proposed to install mining and processing facilities costing between $200,000 and $500,000. It is agreed that Jefferson County now levies its constitutional limit of taxes and that there is very little, if any, tax revenue available for the maintenance of the forest. It is estimated that the mineral lease would yield a minimum annual revenue of $12,000, which would be used exclusively for the purpose.

The question of the authority of the fiscal court to execute the lease was submitted upon an agreed statement in accordance with the procedure provided in Sec. 637, Civil Code. The circuit court was of opinion that the statute restricts the use of the property as a forest exclusively with the sole exception of recreational purposes to the extent.

Wm. F. Clarke, Louisville, for appellant.

Lawrence G. Duncan, Louisville, for appellee.

STANLEY, Commissioner.

The state, in the exercise of its police power to enact laws for the general welfare of the people, particularly for the conserva-

that they are consistent with the dominant purpose and that those uses only permit the granting of concessions or renting of small parts for refreshment stands and like conveniences. We concur in the opinion.

■ The statute outlines in definite language the objective of maintaining a permanent forest reservation. It authorizes cooperation with the State Division of Forestry in the Department of Conservation. It specifically directs the planting of trees upon denuded or bare land and authorizes the cutting of growing timber "in accordance with approved forestry methods and in such manner as to perpetuate succeeding stands of trees." The Legislature recognized that one of the reasons for preserving the forest is that it may be enjoyed by the people, so it was provided in KRS 149.260: "All lands acquired under the provisions of [the act] shall be protected at all times, as far as possible, from fire and grazing, and shall be kept and maintained as a permanent public forest, * * * All such forest lands shall be open to the use of the public for recreational purposes so far as such recreational purposes do not interfere with, or prevent the use of, such lands to the best advantage as a public forest."

We have analogous applicable law in the decisions denying authority of a city to divert to other or inconsistent purposes property acquired for a public park. Of particular application are the statutes governing a city of the third class, which is expressly authorized to acquire and maintain a park (KRS 97.530) and is given general authority by another statute to lease or convey property owned by the city, KRS 85.101. But such general authority does not embrace property dedicated to park purposes. Massey v. City of Bowling Green, 206 Ky. 692, 268 S.W. 348; Board of Park Commissioners of Ashland v. Shanklin, 304 Ky. 43, 199 S.W.2d 721. Of special application is Bedford-Nugent Co. v. Argue, 281 Ky. 827, 137 S.W.2d 392, in which it was held that the City of Henderson was not authorized to lease part of land which had been dedicated for park purposes for the operation of a sand and gravel business, even though the part was a deep ravine, had never been improved and had long been used as a public dump for refuse.

Still more pertinent to the present case is Association for the Protection of the Adirondacks v. MacDonald, 253 N.Y. 234, 170 N.E. 902, 903. The State of New York had acquired about 2,000,000 acres for a Forest Preserve within the Adirondacks. A constitutional provision declared: "The lands of the State, now owned or hereafter acquired, constituting the forest preserve as now fixed by law, shall be forever kept as wild forest lands. They shall not be leased, sold or exchanged, or be taken by any corporation, public or private, nor shall the timber thereon be sold, removed or destroyed." Const. 1894 N.Y. art. 7, § 7. The Legislature enacted a statute authorizing the Conservation Commissioner to construct and maintain a bobsleigh run or slide within the Preserve to provide facilities for the forthcoming international Olympic winter games. The toboggan slide, about 1¼ miles in length, would have required the removal of 2,500 trees and the clearance of about 4½ acres of land. The court fully recognized the desirability of having the facilities and appreciated the fact that the sports would be of great public interest and benefit to the people of the state. Nevertheless, it was constrained to hold the statute violated the constitutional provision against destroying timber and declared the act void. It expressly withheld deciding what could be done in the forest lands to preserve them or what reasonable cutting or removal of timber may be necessitated in order to properly preserve the state park.

In the present case the statute and order of the fiscal court are comparable to the constitution and statute in the New York case. Our statute requires that the county forest shall be permanently maintained as such and that denuded places shall be reforested. There is nothing to show that this area cannot be reforested in accordance with the objective of the statute. The permitted use for recreational purposes is consistent with the main purpose of the forest. But even that is permitted only so far as it does "not interfere with, or prevent the use of, such lands to the best advantage as

a public forest." KRS 149.260, quoted above. The use of this property for industrial purposes does not conform. Quarrying shale or rock and operating machinery in the processing of it is inconsistent and unrelated.

The appellants rest the justification of their position in part on the word "otherwise" in this provision of KRS 149.250: "All revenue derived from such forest land by the sale of timber or otherwise shall accrue to the use of the county owning and holding such land."

A definition of "otherwise" is, "In a different manner; in another way, or in other ways." Webster's International Dictionary. In the interpretation or application of the word consideration must be given the purpose and the object in view. We lift this from the above cited New York opinion: "Words are but symbols indicating ideas, and are subject to contraction and expansion to meet the idea sought to be expressed; they register frequently according to association, or like the thermometer, by the atmosphere surrounding them." [253 N.Y. 234, 170 N.E. 904.]

In this atmosphere we think the word "otherwise" refers to revenue derived from a source that is legally permissible within the purview of the statute. It is to be defined in a sense that is consonant with and which promotes the object and design of the statute. Unlimited, the word would open the door for unrestricted use of the property without respect to the purpose of its acquisition and maintenance.

We cannot accept the appellants' argument that the county forestry act is to be read in connection with Chapter 58 of the statutes (enacted at the same session) relating to the acquisition and development of public projects, although the term is defined therein as including lands and facilities suitable for or intended for public purposes or use in the promotion of the public welfare. KRS 58.010. The specific statute relating to public forests cannot be made subordinate to or in effect held to be repealed in part by this broad and general statute which looks to the acquisition and

development of industries and public facilities through the issuance of revenue bonds. Each statute is to be construed in its own field of operation. The one is not enlarged or limited by the other.

The judgment is affirmed.