Ida BAKER, Individually and as a representative of a class, Appellant,

v.

CITY OF LEXINGTON, a municipal corporation et al.

Court of Appeals of Kentucky.

Nov. 19, 1954.

to the City of Lexington Municipal Improvement Corporation, a non-profit institution organized and existing for the purpose of acquiring, holding, and otherwise dealing with property in and about the City to promote its municipal interests. Upon acquisition of this property the Improvement Corporation would issue bonds, with the property as security, in order to finance the construction of the swimming pool. The Corporation will be obligated to lease the property back to the City Park Board for one year at a rental sufficient to pay one year's principal and interest on the bonds. The Board would have an exclusive option to renew the lease from year to year on similar terms. When the rental payments (plus additional funds which optionally may be paid to the Corporation) have been sufficient to retire the bonds, then the Corporation will reconvey the park property to the Park Board.

It is specifically provided in the proposed deed that the property will be subject to mortgage foreclosure by the bond holders in the event the lease is not renewed or the prescribed rental payments are not made. This part of the plan obviously causes the principal difficulty, because it is possible that if it became necessary to foreclose the mortgage executed as security for the bonds, the City and the public may lose the entire Park.

In the past this Court has upheld the validity of financing plans similar to the one before us. Waller v. Georgetown Board of Education, 209 Ky. 726, 273 S.W. 498; Hughes v. State Board of Health, 260 Ky. 228, 84 S.W.2d 52; Sizemore v. Clay County, 268 Ky. 712, 105 S.W.2d 841.

KRS 84.010 authorizes a city of the second class, such as Lexington, to acquire property for municipal purposes and also empowers it (among other things) to "dispose of its property, for such purposes and considerations as the city legislative body deems proper for the public welfare." KRS 97.450 provides that "title" to all property owned and used for park purposes by such cities "shall vest in the boards of park commissioners".

Weldon Shouse, Lexington, for appellant.

E. Foster Ockerman, John R. Cook, Jr., Nolan Carter, Lexington, and Cornelius W. Grafton, Louisville, for appellees.

CLAY, Commissioner.

This is a declaratory judgment proceeding to test the legality of a proposed financing scheme for the construction of a swimming pool in what is known as Woodland Park in the City of Lexington. The Chancellor approved the plan.

Woodland Park, comprising some 18 acres, was acquired by the City in 1902, and it has for many years been dedicated to and used for park purposes by the general public. As an improvement in the park facilities it appears desirable to build a swimming pool. The City apparently is not in a position to finance the construction costs. Thereupon the following plan was devised.

The park property would be conveyed in fee simple by the proper City authorities

The argument is made that under the provisions of the last mentioned statute the title to this property is in the Park Board and there is no legislative authorization permitting the Park Board to make a conveyance. It has been decided that property held in a governmental capacity and dedicated to a public use cannot be sold or leased without legislative authority. Bedford-Nugent Co., Inc., v. Argue, 281 Ky. 827, 137 S.W.2d 392; Southeastern Greyhound Lines, Inc., v. City of Lexington, 299 Ky. 510, 186 S.W.2d 201; Commonwealth v. City of Corbin, Ky., 1954, 264 S.W.2d 263. Admittedly the Park Board has no such authority.

■ We do not believe, however, that KRS 97.450, providing that title shall vest in the Park Board, so divested the City of its interest in this property that its power of disposition, granted by KRS 84.010, may not be invoked. The apparent aim of the former statute was to give the Park Board title for such purposes as would enable it to exercise complete and exclusive custody and control of the property as a public park. The Park Board may be considered a trustee, but the power of ultimate disposition, if any exists, is in the City. Only by this construction may we give full force and effect to KRS 84.010, which defines the powers of cities with respect to property acquired for municipal purposes. If there is a limitation on the authority of the Park Board, it does not necessarily deprive the City of its general power to dispose of this property, particularly if the proposed disposition is not repugnant to a park purpose and is consented to, as here, by the Park Board. Thus the technicality with respect to conveyance of title does not present an obstacle to the plan.

■ Our major problem is whether or not the remote possibility of the public's loss of Woodland Park is enough to condemn this scheme. We think it clear that neither the City, nor the Park Board, nor both, could dispose of this property for a purpose inconsistent with its use as a public park. Where attempted changes of use or disposition of similar property have been condemned, as in the cases of City of Hopkinsville v. Jarrett, 156 Ky. 777, 162 S.W. 85, 50 L.R.A.,N.S., 465; Bedford-Nugent Co., Inc., v. Argue, 281 Ky. 827, 137 S.W.2d 392, the fundamental consideration was not the kind of disposition being made but whether or not it constituted a diversion of the public use for a purpose inconsistent with that to which the property had been dedicated.

■ An examination of the plan before us shows clearly that its principal, overriding, and in fact only purpose is to further the use of the property as a public park. There is tied up in the plan a necessary secondary objective, which is to vest in the Improvement Corporation a clear fee simple title to the property in order to secure and make possible the bond issue. However, it is not the intention of any party involved that this property shall ever be diverted from its public park use. Under the circumstances shown, the remote possible loss of the property, involving a consequent use inconsistent with park purposes, should not condemn a plan the only real purpose of which is the improvement of the Park. In effect the City, in the public interest, is loaning the title to this property to another institution in order to effectuate a laudable plan of improvement. The risk of loss is remote and incidental. In our opinion this is a reasonable risk which "the city legislative body deems proper for the public welfare." KRS 84.010.

In view of the question concerning the nature of the title vested in the Park Board, we think the Chancellor properly decided that both the City and the Park Board should join in the deed of conveyance.

The judgment is affirmed.